UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JONATHAN P,

                              Plaintiff,

        v.

ACTING COMMISSIONER OF SOCIAL
SECURITY,

                              Defendant.

Case No. 3:25-cv-05374-TLF

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

        …

        Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of defendant's denial of plaintiff's application for supplemental security income ("SSI") and] disability insurance benefits ("DIB"). The parties have consented to have this matter heard by the undersigned Magistrate Judge. Dkt. 2. Plaintiff challenges the ALJ's decision finding that plaintiff was not disabled. Dkt. 11, Complaint.

        Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). The Court must consider the administrative record as a whole. *Garrison v.*

1

*Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

On June 20, 2022, plaintiff filed a Title II application for a period of disability and disability insurance benefits. Administrative Record ("AR") 189-202. Plaintiff also filed a Title XVI application for supplemental security income on June 20, 2022. *Id*. In both applications, plaintiff alleged disability beginning November 3, 2020. *Id*. These claims were denied initially on November 8, 2022, and upon reconsideration on January 3, 2023. AR 17. Plaintiff's request for a hearing was granted, and ALJ Denise Martin conducted the hearing by phone on April 16, 2024; the ALJ found plaintiff was not disabled from November 3, 2020 to the date of the decision. AR 17-31.

On February 26, 2025, the Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security. AR 1–6. Plaintiff now seeks review of the ALJ's decision. Dkt. 1.

ALJ Martin found plaintiff to have the following severe impairments: diabetes, amputated digit of left hand, and pancreatitis. AR 19. As a result, the ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) except "he can never climb ladders, ropes, or scaffolds. He can perform frequent, but not repetitive handling and fingering with the left hand. He must avoid unprotected heights and dangerous moving machinery." AR 21.

DISCUSSION

**1.  Whether the ALJ harmfully erred by discounting the opinion of Dr. Amato**

Plaintiff assigns error to the ALJ's evaluation of the medical opinion of treating physician Dr. Chiante Amato, D.O. Dkt. 9 at 8-10. Defendant argues the ALJ reasonably assessed the persuasiveness of Dr. Amato's opinion. Dkt. 11 at 5-7.

Under the revised regulations, an ALJ must consider every medical opinion in the record and evaluate each opinion's persuasiveness, with the two most important factors being "supportability" and "consistency." *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022); 20 C.F.R. § 404.1520c(a). Supportability concerns how a medical source supports a medical opinion with relevant evidence, while consistency concerns whether a medical opinion is consistent with other evidence from medical and nonmedical sources. *See id.*; 20 C.F.R. § 404.1520c(c)(1), (c)(2). The ALJ is not required to take every opinion of medical professionals at "face value". *Ford v. Kijakazi*, 32 F.4th 785, 789 (9th Cir. 2022). Yet "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.* at 792.

In a medical report dated March 22, 2022, Dr. Amato opined that plaintiff would have to lie down during the day "due to chronic pain" and would be unable to sustain regular work without deterioration because he needed to rest and eat regularly. AR 1541 (explaining "CT imaging shows chronic pancreatitis findings"); AR 500 (imaging revealed "[s]evere atrophy of the body and tail of the pancreas."). She also stated that, if plaintiff worked a 40-hour per week schedule, it would be more probable than not that he would miss work due to medical impairments, but she could not discern exactly how

much. *Id.* Dr. Amato stated the limitations documented in the report had existed since at least November 2019. AR 1542.

On July 28, 2023, Dr. Amato completed a Documentation Request for Medical Condition and for Medical or Disability Condition. AR 1544-46. She documented that examples of plaintiff's limitations, due to his chronic pancreatitis, include the ability to lift heavy objects, stand or sit for long periods of time, and bend over because during the occasions when his "pancreatitis is flaring, he has [abdomen] pain/nausea which prevents lifting or ability to be upright for prolonged periods." AR 1544. She further notes that he should be limited to 21-30 hours of work per week at a sedentary job. AR 1545. According to the report, his flare-ups will impact his ability to access services and advocate for himself. *Id.* Because the condition is chronic, the treatment plan is medication management under a gastroenterologist and primary care physician; she states he will need a lifetime of care. *Id.*

The ALJ found Dr. Amato's opinions unpersuasive for three reasons: (1) they are not "supported aside from listing the claimant's pancreatitis as a condition and the claimant's chronic pain without reflecting the improved level of pain shown in the record"; (2) "are inconsistent with the record that shows lessened hospitalizations for pancreatitis with sobriety from alcohol"; and (3) "inconsistent with evidence the claimant did not have significant complications from diabetes…" AR 23-24.

- Supportability

The ALJ's supportability finding is not supported by substantial evidence. Dr. Amato saw plaintiff as early as October 2021. AR 315. She has a history with the patient and was aware of his medical records. In her report, she relied on objective

medical evidence –CT imaging confirming chronic pancreatitis. AR 1541; *see also* AR. 324–25, 499–500 (documenting pancreatic abnormalities, including atrophy). The ALJ failed to acknowledge this evidence and instead dismissed the opinion as merely listing a diagnosis.

- Consistency

The ALJ cites an "improved level of pain," but failed to identify evidence demonstrating meaningful improvement in plaintiff's functional capacity. AR 23. The ALJ only relies on reduced hospitalizations, and attributes that to sobriety. AR. 24. For both statements, the ALJ does not provide an explanation supported by substantial evidence for this reasoning.

The ALJ has a duty to give reasoning "in a way that allows for meaningful review," *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

Considering the record as a whole, the medical documentation demonstrates persistent and severe symptoms. Plaintiff repeatedly reported constant, daily abdominal pain despite sobriety and treatment, for example:

On May 17, 2022, plaintiff told Karen Carlson, A.R.N.P., that his pancreatitis symptoms were worsening, and he was interested in pain management and diagnostic imaging. AR 354; AR 359 (describing the pain as "24/7 for a long while now"). He mentioned he had discussed these issues with his primary care provider many times now. AR 359.

On August 17, 2022, plaintiff sought treatment for his chronic pancreatitis with Corey Sullivan, M.D. AR 1443-57. He informed Dr. Sullivan that his pain was "24/7" and that he had severe symptoms at least weekly and has sharp pain that feels akin to someone

taking a hand under his rib cage and lifting him up. AR 1444. Plaintiff was not interested in opioids because of his prior history with alcohol and addictive behavior. *Id*. Dr. Sullivan prescribed duloxetine for his pain. *Id*.

On September 9, 2022, plaintiff saw his primary care physician Dr. Amato. AR. 1462. Dr. Amato doubled the dose of plaintiff's duloxetine because, he claimed it was not helping, "in hopes this will help his chronic pain related to his pancreatitis." AR 1462-63. In December 2022 plaintiff still had pain, and he told Dr. Amato he was unsure if the increase in duloxetine had helped because he felt so tired. AR 1492.

On January 3, 2023, plaintiff saw gastroenterologist Meimin Xie, M.D., for further treatment of his chronic abdominal pain. AR. 1550. He continued to report a pain like someone poking him with a finger, exacerbated by eating and physical activity. *Id*. He reported the duloxetine had not provided much relief. *Id.* His last drink had been two years prior on January 1, 2021, and the pain had consistently continued. *Id.*  Dr. Xie recommended he continue taking pancreatic enzymes and "[c]ontinue with attempts on symptomatic control." AR 1552.

On January 13, 2023 petitioner returned to see Dr. Amato. AR 1884. He told Dr. Amato that his abdominal pain was a constant 5-6, out of 10, and that he continued to have a hard time due to nausea. AR 1885. Dr. Amato assessed his pancreatitis as "stable." AR 1884.

Before surgery for a hernia on June 30, 2023, plaintiff reported chronic abdominal pain from pancreatitis, despite being sober for almost two and half years at that point. AR. 1897.

On September 27, 2023, plaintiff saw Dr. Amata as a follow up on his chronic pancreatitis pain. AR 1659. They "discussed as he continues to have chronic daily symptoms that are keeping him from being able to work that he should have a specialist…" AR 1660.

Medical providers continued to adjust predications and pursue symptomatic management, with no significant relief from the pain. The ALJ's reasoning regarding plaintiff's lack of emergency room visits and struggle with sobriety was not based on substantial evidence. At the hearing, plaintiff testified that his condition had improved "a smidgeon" since sobriety and stated that lack of trips to the emergency room had been because of his lack of money to pay for ER visits. AR 44. The ALJ does not address this. "Disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds." *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). Nor does the ALJ's reference to a lack of complications from diabetes meaningfully contradict Dr. Amato's pancreatitis-related limitations.

Accordingly, the ALJ did not have substantial evidence to support the reasoning and did not show how the evidence related to the reasoning. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

- **Harmless error**

An error that is inconsequential to the non-disability determination is harmless. *Stout v. v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). If the errors of the ALJ result in a residual functional capacity (RFC) that does not include relevant work-related limitations, the RFC is deficient and the error is not harmless. *Id.* at 1052, 1054; *see also, Carmickle v. Comm'r. Spc. Sec. Admin.,* 533 F.3d 1155, 1160 (9th Cir.

2008); *Embrey v. Bowen,* 849 F.2d 418, 422-423 (9th Cir. 1988); *Stramol-Spirz v. Saul,* 848 Fed. Appx. 715, 718 (9th Cir. 2021) (unpublished).

If the ALJ had properly considered Dr. Amato's assessment of plaintiff's limitations, the RFC would have included additional limitations. For example, Dr. Amato opined that plaintiff would be limited to working 21-30 hours a week due to his chronic pain. Because the ALJ failed to include any of the limitations the RFC was deficient and the ALJ's error is not harmless and requires reversal.

**2. Plaintiff's statements about symptoms and limitations**

Plaintiff contends the ALJ failed to properly consider his subjective symptom testimony about his pain and fatigue. Dkt. 11 at 2. The ALJ acknowledged that plaintiff's medically determinable impairments could be reasonably expected to cause the symptoms alleged, but found that his statements related to the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. AR 22-23. The ALJ cited inconsistent work history, no hospitalizations for pancreatitis in 2023 and 2024, sobriety from alcohol, lack of complications from diabetes, and the ability to perform activities of daily living. AR 23.

The ALJ's rationale must be "clear enough that it has the power to convince." *Smartt v. Kijakazi,* 53 F.4th 489, 499 (9th Cir. 2022). The analysis here does not meet that standard.

The ALJ's reliance on plaintiff's work history is not adequately explained. In *Thomas v. Barnhart,* 278 F.3d 947, 959 (9th Cir. 2002), the Ninth Circuit held the ALJ gave specific, clear and convincing reasons to not find the claimants testimony credible, including an "extremely poor work history" which highlighted that she had "shown little

propensity to work in her lifetime." The Court held this "negatively affected her credibility regarding her inability to work." *Id*. The record here reflects ups and downs in employment, rather than an "extremely poor work history." The ALJ also did not meaningfully analyze how plaintiff's earnings record reflects a lack of motivation to work, as opposed to the impact of possible impairments.

The ALJ's reliance on reduced hospitalizations and sobriety is not supported by substantial evidence. The ALJ did not explain how fewer emergency room trips translate to an ability to sustain full time work, and the ALJ did not consider the plaintiff's testimony regarding his financial constraints. *See Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995).

The ALJ's reliance on plaintiff's activities of daily living is also insufficient to support a clear and convincing reason. Daily activities may undermine symptom testimony when they contradict the alleged limitations or comprise a substantial portion of the claimant's day and are transferable work skills. *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). The ALJ failed to identify any activities that conflicted with plaintiff's testimony or how those daily activities demonstrate the capacity for sustained work. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("The mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."). Here, the ALJ merely lists activities without analyzing the frequency, duration, or applicability in a workplace setting.

The Court has already concluded that the ALJ committed harmful error and the medical evidence should be reviewed anew, *see supra*, Section I. In addition, a

determination of a claimant's credibility relies in part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c). Therefore, plaintiff's statements about symptoms and limitations, with respect to pain and fatigue, should be assessed anew following remand of this matter.

### 3. Nonmedical Statements from Plaintiff's Father

Plaintiff also argues that the ALJ erred by failing to properly consider the Third-Party Function report completed by his father. Dkt. 9 at 1; AR 246–53.

Under the revised regulations, ALJs are "not required to articulate" how they evaluate evidence from nonmedical sources using the same factors applicable to medical opinion evidence. 20 C.F.R. §§ 404.1520c(d), 416.920c(d)). The Ninth Circuit has not yet clarified whether an ALJ is still required to provide "germane reasons" for discounting lay witness testimony. *See Stephens v. Kijakazi*, 2023 WL 6937296, at *2 (9th Cir. Oct. 20, 2023). Other relevant regulations indicate that ALJs will consider evidence from nonmedical sources when evaluating a claim of disability. *See, e.g.*, 20 C.F.R. §§ 404.1529(c)(1), 404.1545(a)(3), 416.929(c)(1), 416.945(a)(3). And, an ALJ may not reject "significant probative evidence" without explanation. *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).

The 2017 regulations did not eliminate an ALJ's obligation to consider and address nonmedical source evidence, including an obligation to articulate germane reasons for disregarding that same evidence. "The fact that lay testimony and third-party function reports may offer a different perspective than medical records alone is precisely why such evidence is valuable at a hearing." *Diedrich v. Berryhill*, 874 F.3d 634, 641 (9th Cir. 2017).

10

The ALJ discounted the report based on reduced hospitalizations allegedly due to plaintiff's sobriety and a lack of significant complications due to diabetes. AR 23. However, as discussed above, the record reflects ongoing symptoms despite reduced emergency treatment, and plaintiff testified that financial constraints contributed to his reduced hospital visits. AR 44. The ALJ did not explain how this evidence undermines the father's observations, nor did the ALJ meaningfully connect the cited evidence to the limitations described.

Defendant does not refute the assertion that the ALJ failed to adequately explain how the cited evidence undermines plaintiff's father's observations but instead argues that any error was harmless because the ALJ's reasons for discounting plaintiff's father's statements apply equally to both plaintiff and his father. Dkt. 11 at 5. The Court disagrees. The ALJ failed to provide a legally sufficient explanation for rejecting probative evidence.

On remand, the ALJ is directed to consider plaintiff's father's Third-Party Function Report and articulate germane reasons for doing so.

**4. Remand for Further Proceedings**

The Court may remand a case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). The Court has reviewed the record and the ALJ's errors. The Court has determined that the ALJ must re-evaluate the medical opinion evidence, plaintiff's subjective symptom testimony, and lay

11

witness evidence. The Court, considering the record as a whole, finds there is ambiguity in the record and therefore a remand for further administrative proceedings is the appropriate remedy. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2016) (Court is required, before remanding for award of benefits, to review the record to determine whether "essential factual issues" have all been resolved).

CONCLUSION

Based on the foregoing discussion, the Court concludes the ALJ improperly determined plaintiff to be not disabled. Therefore, the ALJ's decision is reversed and remanded for further administrative proceedings. The ALJ is directed to:

1. Evaluate the persuasiveness of Dr. Amato's medical opinions, explicitly addressing the relevant imaging findings, and provide a supportability and consistency analysis;

2. Reassess whether the record demonstrates sustained improvement in plaintiff's symptoms and explain any such finding with citation to substantial evidence reflecting improvement;

3. Consider plaintiff's inability to afford treatment when evaluating the reduced emergency room visits;

4. Consider plaintiff's subjective symptom testimony in light of a renewed assessment of the medical evidence; and

5. Reconsider plaintiff's father's statements and provide germane, non-conclusory reasons if rejecting them.

Dated this 20th day of April, 2026

Theresa L. Fricke
United States Magistrate Judge

13